IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EDWARD CARMONA, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. A-06-CA-641-SS |
| | § | |
| SOUTHWEST AIRLINES COMPANY, | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. Summary of Facts

Plaintiff Edward Carmona worked as a flight attendant for Southwest Airlines for 14 years. Ex. 5. Mr. Carmona suffers from a disabling skin condition known as psoriasis and psoriatic arthritis, which he has had for most of his life. Id. Mr. Carmona was well-liked by both fellow employees and customers and performed his job duties well. Ex 1 and 2. Even the President and Chief Operating Officer of Southwest, Herb Kelleher and Colleen Barrett, wrote to Mr. Carmona in 2001 that he was a "beautiful person," a "wonderful son" and that they hoped Mr. Carmona felt as good about Southwest Airlines on its 60th anniversary as he did on its 30th anniversary. Ex. 2.

Unfortunately for Mr. Carmona, however, his Houston base manager, Kevin Clark, did not feel the same way about him as Ms. Barrett and Mr. Kelleher. In fact, Mr. Clark does not like male flight attendants, particularly those he perceives to be homosexual, and feels like those kind of people should not be working for Southwest.[1] Ex. 2. Mr. Clark much prefers to have attractive female flight attendants working for him and therefore allows female employees to get away with much more. Ex. 2, 3, 4, and 5.

---

[1] Not surprisingly, Mr. Clark denies this. In fact he testified in his deposition that he has never in his entire life made a disparaging remark about homosexual males. Ex. 9, p.165 (17-24). Of course at the summary judgment stage, all of the evidence must be viewed in the light most favorable to the non-movant. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993). The factual statements made in this response are with that well-established standard in mind.

For example, when Mr. Carmona broke his thumb and could not come into work because it would jeopardize the safety of the crew and the passengers, Mr. Clark docked him attendance points that ultimately terminated his employment. Ex. 5. In contrast, when a female flight attendant called Mr. Clark and informed him that she had been arrested for driving while under the influence and assaulting a police officer and therefore had to miss work, Mr. Clark did not dock her any attendance points. Id.

On the same trip that Mr. Carmona went on after breaking his thumb, a female flight attendant Mr. Carmona was working with was hospitalized due to a panic attack. Id. While Mr. Carmona had received points for missing work due to a broken thumb, the female flight attendant did not. Id.

Southwest claims that Mr. Carmona's employment was terminated because he had incurred 12 "attendance points" and therefore was subject to automatic termination. The attendance point system at Southwest that allegedly led to Mr. Carmona's termination is not uniformly applied at all. Ex. 3. Not only does incurring attendance points not lead to termination if you are a female flight attendant that Mr. Clark likes, but at the time he was terminated, Mr. Carmona did not even have 12 points. Ex. 2 through 5.

Management at Southwest refused to accommodate Mr. Carmona's disability, refused to grant him medical leave, would not let him take FMLA leave (and thus not accumulate attendance points) even though documents indicate he was eligible, and changed his attendance sheets to give him more attendance points than he actually had incurred in order to trump up a reason to fire him. Ex. 5 and 9, p.91-137.

In contrast, female flight attendants have been granted medical leave or allowed to use vacation time (and thus not given points) after sustaining injuries in a car accident, injuring their back, being thrown in jail, visiting a sick relative, and attending a relative's funeral. Ex. 2, 3, 4 and 5. As stated by current flight attendant Tanya de la Vega-Trotti in her affidavit:

> The point is that if management likes you, they will do what they can to make sure that the time you miss is taken care of and you do not accumulate points. This obviously was not the case for Edward.   See Ex. 3.

## II. Arguments and Authorities

1. **Plaintiff can make out a prima facie case of gender discrimination**

Defendant contends that Plaintiff cannot meet the elements of a prima facie case of gender discrimination as there is no evidence of different treatment. Only a minimal showing, however, is necessary to meet the prima facie burden of a Title VII case. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir.1999); *see also Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir.1995) (establishing a prima facie case in a discrimination case is not a difficult or onerous burden).

Female flight attendants under Kevin Clark who have received 12 attendance points have not been terminated. Female flight attendants under Kevin Clark who have had to miss work for various reasons, including having gone to jail, have not been assessed attendance points. Female flight attendants have been granted medical leave numerous times over the telephone, including for automobile accidents, were not assessed points, and have even been offered to allow them to use vacation days for missed work. None of these things were offered to Mr. Carmona, a male flight attendant who had to miss work for medical reasons. As such, Plaintiff can show that he was treated less favorable than female flight attendants.

2. **Substantial evidence of pretext exists.**

There are two ways for a plaintiff to show pretext in order to survive summary judgment: (1) a plaintiff can show that the stated reason for firing is not true; or (2) that the defendant's reason, even if true, was only one reason for the decision and discriminatory animus was a "motivating factor." *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349-50 (5th Cir.2005).

3

1. <u>There is evidence that the reason for termination is false</u>.

Edward Carmona was supposedly terminated because he had accumulated 12 attendance points due to absences. In order to give Mr. Carmona 12 attendance points, however, Kevin Clark had to manipulate and change the attendance records because in reality at the time Mr. Carmona was terminated he had at most 9 attendance points, and in fact probably only had 4 and a half points.

According to Southwest's documentation, as of June 26, 2005, Mr. Carmona's attendance point accumulation was allegedly 13 points. Ex. 9, depo exhibit 8. Mr. Clark, however, did not terminate Mr. Carmona until July 12, 2005, at which time Mr. Carmona was eligible for so called "record improvement points" which would have reduced his score to 11. Id., depo ex. 7 and Ex. 7, p.94, line 19- p.95, line 1.

In fact, however, Mr. Carmona did not even have 13 points as of June 26, 2005. Ex. 5. His attendance sheets reflect that a doctor's note was used for April 23-25. Ex. 9, depo exhibit 7 and Ex. 5. A doctor's note should not have applied to those days as they were for approved FMLA leave and Mr. Carmona's FMLA undisputedly did not expire until April 30, 2005. Ex.9, depo exhibit 6 and Ex. 5. Management at Southwest later did not allow him to use a doctor's note in either May or June, 2005 because he had allegedly used one in April, 2005. Ex. 5 and Ex. 9, p.124-129. Because the doctor's note should have applied in either May or June, that would reduce his point total by at a minimum 2 points. Ex. 5. Therefore, on June 26, 2005, when Kevin Clark alleges that Mr. Carmona had 13 points which he later bumped up for no apparent reason to 16.5 points, in fact Mr. Carmona had at most 11 points, which would make him ineligible for termination. Ex. 5. Since he was to receive a record improvement reduction of two points as of July 12, 2005, the most possible points he could have had on that date was 9. Id.

Instead of reducing his point score to 9 or 11, Mr. Clark instead went back and, after the fact,

4

changed Mr. Carmona's attendance sheets. This allegedly raised his attendance point score to 16.5. Ex. 9, p.87-89, 110-115. When asked how he arrived at that figure, Mr. Clark could not explain it. Id. at 111-113. In fact, another of Mr. Carmona's supervisors later pointed out to Mr. Clark that his point calculation was wrong, yet he refused to lower the score and upheld the termination. Ex. 8, p. 31-33.

In addition, Mr. Carmona should not have been assessed attendance points in May and June as Southwest's documentation shows that he was still eligible for intermittent FMLA leave. See Ex. 9, p.130-134 and depo exhibits 12 and 13. If his missed days had been covered by FMLA, Mr. Carmona would not have received any attendance points at all during those months. Mr. Clark claims that Mr. Carmona was no longer eligible for FMLA leave after April 30, 2005 as he had allegedly not worked enough hours to qualify. Southwest's documents, however, indicate that Mr. Carmona was in fact eligible for FMLA leave, which means he should not have received any points at all in May or June. Id. **This means that Mr. Carmona's attendance point calculation was in fact 4.5 at the time he was terminated.**

In a unanimous decision, the United State Supreme Court held that when the employer's explanation for discharge is unworthy of credence, that can be circumstantial evidence of discrimination. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48; 120 S.Ct. at 2108-09) (A jury can infer from the falsity of the explanation that the employer is covering up a discriminatory purpose).

Viewing the record in the light most favorable to Plaintiff, when he was making the decision to terminate Mr. Carmona's employment, Mr. Clark realized that due to record improvement Mr. Carmona's score was at 11, which would make him ineligible for termination. Instead of issuing a final warning to Mr. Carmona, Mr. Clark instead doctored the attendance sheets to give him another 3 and a half points that he cannot explain how he arrived at, using that as an excuse to terminate his employment.

2. <u>There is evidence of different treatment of similarly situated female flight attendants.</u>

Evidence of disparate treatment of similarly situated individuals can show that the reason for termination is a pretext for discrimination. *See Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir.2003).

For example, female flight attendants who were arrested have been excused by Mr. Clark and not given points. Female flight attendants in car accidents, hospitalized for anxiety, having to attend funerals, etc. have all been excused from work with no points given to them. Ex. 2, 3, 4 and 5. Viewing the evidence in the light most favorable to Plaintiff, there is a double standard in favor of female flight attendants.

3. <u>There is evidence of Mr. Clark's hostility towards male flight attendants.</u>

As shown by the affidavit of Tina Warren. Mr. Clark does not like male flight attendants, particularly those he perceives to be homosexual. Ex. 2. Mr. Clark's remark to Ms. Warren reveals his animus towards male flight attendants and explains why he has treated Mr. Carmona so differently.

Southwest will likely argue that Mr. Clark's remark is simply a "stray remark." Post-*Reeves*, however, the Fifth Circuit has taken a more "cautious" view of the stray remark doctrine. *See Russell v. McKinney Hosp. Venture*, 235 F.D. 219, 229 (5th Cir.2000). In light of *Reeves*, viewing remarks that a jury could find to evidence animus through a harsh lens is not acceptable. *See Hooker v. Victoria's Secret Stores, Inc.*, 281 F.3d 1278, (5th Cir.2001). The potential damning nature of comments cannot be discounted on the grounds that they were not made in direct context of an adverse employment decision. *See id.* An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or may be used as additional evidence of discrimination. *See Laxton*, 533 F.3d at 583.

A plaintiff wishing to use workplace remarks as circumstantial evidence of discrimination need only prove that the remarks demonstrate (1) discriminatory animus, and (2) on the part of a person that is either

primarily responsible for the termination or who had influence of the relevant decision maker. *See Lewis v. Home Depot USA, Inc.*, 2007 WL 1100422 (W.D.Tex.2007).

4. There is evidence of a failure to follow company procedures.

As further evidence of pretext, Mr. Clark did not follow established company procedures for termination. As admitted to by Mr. Clark in his deposition, Southwest only has 7 business days to terminate a flight attendant's employment after the company learns of the incident giving rise to the termination. Ex. 6. If the company fails to follow this time limit, the flight attendant shall be considered exonerated and the charges against him/her will be dropped. Id. Mr. Clark admits that if he does not terminate the flight attendant's employment within 7 business days, he cannot terminate their employment. Ex. 9, p. 115-19.

In the present case, Mr. Clark admits that the company allegedly had a reason to terminate Mr. Carmona on June 26, 2005, and therefore he only had until July 6, 2005 to terminate his employment. Id.

Even though he failed to follow this established company procedure, Mr. Clark went ahead and notified Mr. Carmona that his employment was terminated on July 12, 2005.

**3.   Defendant's preemption argument**

Defendant's re-urge their argument that Plaintiff's claims are pre-empted by the Railway Labor Act ("RLA"). The United States Supreme Court decision in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S.Ct. 2239 (1994) and the Fifth Circuit Court of Appeals decision in *Hirras v. National Railroad Passenger Corp.*, 44 F.3d 278 (5th Cir.1995), contradict this argument. In *Norris*, a unanimous Supreme Court held that a cause of action was not preempted if it involved rights and obligations that exist independent of the CBA. *See id.* at 246-47. In *Hirras*, the Fifth Circuit reversed a lower court's ruling that the plaintiff's Title VII claims were precluded by the RLA. *See Hirras*, 44 F.3d at 280.

7

"[M]ost of the cases addressing whether the RLA preempts claims under federal anti-discrimination statutes have held that there is no preemption." *Adams v. American Airlines, Inc.*, 202 F.3d 281 (10th Cir.2000) (finding Title VII sex discrimination claim not preempted by RLA).[2]

The court in the *Felt* case found that even though the CBA contained a "non-discrimination" clause, that this did not mean the RLA preempted the Title VII cause of action. *See Felt*, 60 F.3d at 1419-20. The *Felt* court found that the Title VII claim could not be "conclusively resolved" by consulting the CBA, and therefore there was no RLA preemption. *See id.* The *Felt* court also noted that the Supreme Court had rejected the defendant's argument that preemption was required because the defendant's purported reason for termination was based on a contractual right to terminate pursuant to a CBA. *See id.* at 1420-21.

In *Hirras*, the Fifth Circuit stated that even if the resolution of a claim involved reference to the CBA, the Supreme Court has emphasized that when the meaning of contract terms is not the subject of the dispute, the fact that the CBA will be consulted does not mean the case is preempted. *See id.* at 283.[3]

In the present case, Plaintiff's claims for discrimination and retaliation cannot be conclusively resolved through interpretation of the CBA, nor is the dispute substantially dependent upon an analysis of

---

[2] *See, e.g., Saridakis v. United Airlines*, 166 F.3d 1272 (9th Cir.1999) (ADA claim not preempted); *Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1419 (9th Cir.1995) (Title VII religious discrimination claim not preempted); *McAlester v. United Airlines*, 851 F.2d 1249 (10th Cir.1988) (race discrimination claim not preempted); *Nomran v. Missouri Pacific R.R.*, 414 F.2d 73 (8th Cir.1969) (Title VII race discrimination claim not preempted); *Horton v. Norfolk Southern Corp.*, 102 F.Supp.2d 330 (M.D. N.C.1999) (Title VII claim not preempted).

[3] Courts which have analyzed the decision have uniformly found that the RLA does not preempt claims such as Plaintiff's in this case. *See Johnson v. Norfolk Souther Corp.*, 953 F.Supp.364, 365-67 (N.D.Ala.1997); *Lozano v. Stamp*, 2001 WL 775525 (E.D.La.2001); *In re Allied Pilots Class Action Litigation*, 2000 WL 1405235 (N.D.Tex., Sep. 26, 2000); *Soileau v. Southwest Airlines Co.*, 1999 WL 1140883 (N.D.Tex., Dec. 13, 1999).

it. Plaintiff does not take any issue with any *interpretation* of the CBA. Reference to or consideration of the terms of a CBA is not the same as interpreting the meaning of its terms. *See Laresca v. American Telephone & Telegraph,* 161 F.Supp.2d 323, 330 (D.N.J.2001). If it were, all discrimination claims brought by union employees would be preempted because the starting point of every case would be the CBA. The underlying claim is that the employer discriminated against the employee in applying the terms and conditions, not the interpretation of the terms and conditions themselves. *See id.* at 331.

While the CBA in the present case may be a relevant part of the case, it cannot conclusively decide the issues. The heart of this dispute is what motivated the Defendant when it decided to terminate Plaintiff's employment. The trier of fact is thus charged with reading the minds of the persons who made the decision. These are purely factual disputes which cannot be resolved through an interpretation of the CBA.

4.      **Plaintiff has a disability under the ADA**

The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities. See 42 U.S.C. §12102(2). The ADA requires an individual inquiry into the effect of the condition on the plaintiff's life to determine whether an individual has a qualifying disability. *See Sutton v. United Airlines, Inc.*, 119 S.Ct. 2139, 2147 (1999). Psoriasis and psoriatic arthritis have been specifically found to constitute a disability under the ADA. *See Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 780-81 (6th Cir.1998) (reversing summary judgment on ADA claim).

Edward Carmona has a chronic condition of psoriasis and psoriatic arthritis that will last his entire life. Ex. 5. Psoriasis and psoriatic arthritis are serious, chronic, inflammatory, disfiguring, and life-altering diseases that require sophisticated medical intervention and care. It can be a painful and disabling disease that has a significant and adverse impact on the quality of life of individuals who are diagnosed with them.

Mr. Carmona's disease causes him significant physical discomfort and disability. Ex. 5. Itching and soreness are common. He has not had a good night sleep in years. Id. Itching and pain from an outbreak of the disease often substantially interfere with basic functions of life such as self-care, walking and sleeping. During an outbreak, even the simple act of squeezing a tube of toothpaste can cause significant pain. Id. During an inflamation, Edward has had significant difficulty walking. Id.

### 5. **Plaintiff was qualified for his former position with a reasonable accommodation**

To satisfy the second element of a prima facie disability case, an employee must establish that a reasonable accommodation is possible. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 n.12 (6th Cir.1996). The employee's initial burden of articulating a reasonable accommodation is not onerous. *See Cehrs*, 155 F.3d at 781. For the purposes of a prima facie case, the plaintiff must merely suggest the existence of a plausible accommodation, the costs of which do not clearly exceed the benefits. *See Borkowski v. Valley Cent. School Dist.* 63 F.3d 131, 138 (2d Cir.1995). If the employee establishes a reasonable accommodation is possible, the burden shifts to the employer to prove that the accommodation is unreasonable and imposes an undue hardship. *See Monette*, 90 F.3d at 1186 n.12.

In the present case, as admitted by Defendant in its Motion for Summary Judgment, Mr. Carmona was able to perform his job as a flight attendant with a reasonable accommodation for 15 years.[4] Defendant approved Plaintiff's intermittent FMLA leave throughout his employment. As such, Plaintiff can show that he could perform his job with a reasonable accommodation. Given that Southwest approved of it for years, it cannot show that the burden of the accommodation was unreasonable or imposed an undue hardship.

---

[4] As stated in Defendant's motion, "Plaintiff took intermittent FMLA leave throughout most of his employment with Southwest with no adverse consequences." See Defendant's Motion, p.10.

10

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays this Honorable Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

ROSS MELTON, P.C.
1104 San Antonio St.
Austin, Texas 78701
(512) 474-7677 Telephone
(512) 474-5306 Facsimile

_____
John F. Melton
State Bar No. 24013155

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

By my signature hereunder affixed, I certify that a true and correct copy of the foregoing document has been transmitted to all parties of record **via CMRRR**, on this 18th day of June, 2007, addressed as follows:

Lacey L. Gourley
Bracewell & Giuliani, L.L.P.
111 Congress Avenue, Suite 2300
Austin, Texas 78701-4061

_____
John F. Melton